59 So.2d 620

## HOLMAN v. STATE.

### 4 Div. 211.

Court of Appeals of Alabama.

May 13, 1952.

Rehearing Denied June 4, 1952.

Preston Clayton, Clayton, and Sam A. LeMaistre, Eufaula, for appellant.

Si Garrett, Atty. Gen., and Thos. M. Galloway, Asst. Atty. Gen., for the State.

CARR, Presiding Judge.

In the court below the accused was convicted of kidnapping, the offense denounced by Section 6, Title 14, Code 1940. The statute provides:

"Any person who forcibly or unlawfully confines, inveigles, or entices away another, with the intent to cause him to be secretly confined, or imprisoned against his will, or to be sent out of the state against his will, shall, on conviction, be imprisoned in the penitentiary for not less than two nor more than ten years."

It is interesting to note that the crime of kidnapping is centuries old. It is defined in the Bible, and punishment for a violation is fixed therein.

"And he that stealeth a man, and selleth him, or if he be found in his hands, he shall be surely put to death." Exodus, Chapter 21, Verse 16.

"If a man be found stealing any of his brethren of the children of Israel, and maketh merchandise of him, or selleth him; then that thief shall die; and thou shalt put evil away from among you." Deuteronomy, Chapter 24, Verse 7.

At common law the crime of kidnapping consisted of the stealing and carrying away of any person from his own country. The element of forcible abduction is made essential.

Basically, the prime ingredient of the offense is the taking or detaining of a person against the subject's will and without authority of law.

The statutes in the various jurisdictions generally set out and define the damnifying elements or constituents of the crime. In many instances these definitions or specifications may greatly enlarge and extend the common-law embodiments.

In our State the statute of instant concern has a long historical background. Since the Code of 1886 (Section 3746) the law has been brought forward in succeeding codes without change in verbiage.

In the case of Doss v. State, 23 Ala.App. 168, 123 So. 237, this court reviewed an appeal based on a judgment of conviction for an alleged violation of the statute with which we are now concerned. The case was also reviewed by the Supreme Court, 220 Ala. 30, 123 So. 231, 68 A.L.R. 712.

Both Presiding Judge Bricken, for our court, and Justice Brown, for the Supreme Court, authored very able opinions in response to this review.

We will take the analyses and interpretations of the statute which are carefully and clearly announced in these two opinions as a basis and guide for our approach to a review of the questions presented in the case at bar.

Appellant's attorneys rely primarily on the insistence that the evidence is not sufficiently potent to sustain a judgment of conviction.

This question is presented by a motion to exclude the evidence and discharge the defendant, and also by the request for the general affirmative charge.

The indicated motion is recognized in this jurisdiction as a proper procedure in criminal cases. Terry v. State, 29 Ala.App. 340, 197 So. 44; Underwood v. State, 33 Ala.App. 314, 33 So.2d 379.

We are convinced that there is merit in appellant's contentions. For obvious reasons, therefore, we will refrain from expressing our views as to the weight and sufficiency of the evidence as it may relate to offenses for which other prosecutions may follow.

On May 11, 1951, the dead body of Jack Woolf was found at a place in the State of Georgia, about six miles from Eufaula, Alabama. The location was not a great distance from the line which divides the two states. He had been shot three times with a pistol. The condition of his body and his absence from his home and business indicated that he was killed the afternoon before.

The deceased operated a store in Eufaula, Alabama.

At the time, C. H. Holman, Jr., the appellant, was employed as a traveling salesman by the Albany Hardware Company. His business headquarters and place of residence were in Albany, Georgia.

The City of Eufaula, Alabama, was included in the trade territory of the appellant, and he usually covered this route on Thursday of each week. Jack Woolf was one of his regular customers.

On May 10, 1951, appellant left Albany during the forenoon and after calling on some merchants en route he reached Eufaula about 12:45 P. M. He went to Jack Woolf's place of business, but, on account of the Thursday afternoon closing custom, he found the store closed.

He then went to a local filling station and purchased some gas, for which he signed a courtesy card. From this point he proceeded to the residence of Jack Woolf. He found only the maid at home. He made his identity known and was advised that neither Mr. nor Mrs. Woolf was in. He went back to the store and left a business calling card on which he wrote that he was sorry to have missed Mr. Woolf.

The delineated evidence is without conflict. Appellant's testimony in this aspect is supported by that of the maid and the indicated record evidence.

According to the defendant's testimony he forthwith left Eufaula and proceeded towards his home. He made some contacts en route. This was corroborated by the testimony of the parties he saw. He went fishing in the late afternoon at a lake or stream near Albany and finally reached his home about suppertime. His daily report to his employer evidenced that he made these travels and calls during the day.

The appellant married Jack Woolf's niece. There is no evidence of unfriendliness or ill will between the parties. In fact, the contrary appears. They visited in each other's home from time to time.

There is considerable evidence relating to Jack Woolf's movements about the streets of Eufaula during the noontime period on this day.

The appellant was driving a gray Chrysler automobile. Several witnesses testified that they saw a gray colored car parked and traveling along the city streets during the early afternoon of the day in question. There is no evidence that Jack Woolf and appellant were together in Eufaula on May 10th.

There is some evidence from which the jury could have reasonably inferred that the two parties were seen together in appellant's car as it traveled in the general vicinity of the place where the dead body was found.

There is evidence, also, of some rather unusual personal business relationships between Mr. Woolf and the accused. There is no indication from the record that any misunderstandings or ill feelings arose out of any of these transactions, or that a motive for the charged crime was occasioned therefrom.

It is evincingly clear and unquestionably true that the State anchored its prosecution solely on circumstantial evidence.

The rules relating to this character of proof have been frequently and repeatedly announced by our appellate courts. Nothing could be gained by an extensive discussion of the doctrine.

 This written instruction has been approved:

"The court charges the jury that a person charged with a felony should not be convicted, unless the evidence excludes to a moral certainty every reasonable hypothesis but that of her guilt; no matter how strong the circumstances are, they do not come up to the full measure of proof, which the law requires, if they can be reasonably reconciled with the theory that the defendant is innocent." Bryant v. State, 116 Ala. 445, 23 So. 40, 41; Wilson v. State, 243 Ala. 1, 8 So.2d 422; McKenzie v. State, 19 Ala.App. 319, 97 So. 155; Tatum v. State, 20 Ala.App. 24, 100 So. 569. See also, 6 Ala. Digest, Crim. Law, ☞552(3).

In Bowen v. State, 140 Ala. 65, 37 So. 233, 234, the Supreme Court held that this charge should have been given:

"The test of the sufficiency of circumstantial evidence in a criminal case is whether the circumstances, as proven, are capable of explanation upon any reasonable hypothesis consistent with the defendant's innocence, and, if they are capable of such explanation, then the defendant should be acquitted."

 It has often been held in effect that mere suspicion, conjecture or probabilities that the defendant is guilty are not sufficient to overcome the prima facie presumption of innocence. 6 Ala.Digest, Crim.Law, ☞560.

"Opportunity to commit crime, or even knowledge of its commission, without more, is not sufficient evidence upon which to base a verdict of guilt." Lang v. State, 252 Ala. 640, 42 So.2d 512, 514.

To sustain a conviction in a criminal case the evidence must establish every material element or ingredient of the charged crime. The degree of proof thus required must be beyond a reasonable doubt and to a moral certainty. Spelce v. State, 17 Ala.App. 401, 85 So. 835.

In other words, the presumption of innocence of an accused in a criminal cause is evidential. This presumption must be overcome by evidence. The fact that an indictment was returned against the defendant furnishes no proof of the guilt of the indictee.

The notion of the scintilla rule has no application in criminal cases in this jurisdiction. Ex parte Grimmett, 228 Ala. 1, 152 So. 263; McKee v. State, 26 Ala. App. 589, 164 So. 305; Blue v. State, 246 Ala. 73, 19 So.2d 11; Lewis v. State, 27 Ala.App. 155, 167 So. 608.

These pronouncements are expressions of the deep concern of the criminal law that only the guilty should suffer the penalty for crime.

"The sea of suspicion has no shore, and the court that embarks upon it is without rudder or compass."

In our approach to a review of the question of instant concern, we have adhered to the doctrine that we are required to take the evidence in its most favorable light for the prosecution. McGee v. State, ante, p. 276, 55 So.2d 223; Hubbard v. State, ante, p. 110, 53 So.2d 631.

After a careful and studious consideration of the evidence in this case we are brought to the inescapable conclusion that the defendant was due the general affirmative charge, and for its refusal reversible error must be predicated.

The judgment at nisi prius is ordered reversed and the cause is remanded.

Reversed and remanded.