221 So.2d 691

**Aubrey Al PATE**

**v.**

**STATE.**

**5 Div. 716.**

Court of Appeals of Alabama.

April 1, 1969.

Jas. T. Gullage and Walker & Hill, Opelika, for appellant.

MacDonald Gallion, Atty. Gen., and Richard F. Calhoun, Asst. Atty. Gen., for the State.

PRICE, Presiding Judge.

This appellant stands convicted of the offense of burglary in the second degree, with a penitentiary sentence of ten years.

According to the State's evidence, Clark's Parkway Pharmacy, Opelika, was broken into the night of January 17, 1967. Mr.

---

Clark and his son discovered the front door had been broken and saw two persons inside the store. This was around nine o'clock. About the same time, Mr. Clark noticed a late model automobile, with dark top and light colored bottom, moving slowly along the Pepperell Parkway in front of the pharmacy, going in the direction of Auburn. The driver was looking toward Mr. Clark. This automobile drove to the second driveway to the left, facing the store, stopped and backed fifty feet down the highway to the driveway on the right. It backed into this driveway and proceeded to back to the drive-in prescription window, located about the center of the store. It remained at the prescription window for a minute or two, pulled out of the driveway, turned left onto Pepperell Parkway, turned left again at west Thomason Circle and parked in Dr. Weldon's parking area. Dr. Weldon's office is to the right of the pharmacy, and is between the pharmacy and west Thomason Circle. The entrance to Dr. Weldon's driveway is from west Thomason Circle and his office is just across the driveway from Mr. Clark's place.

Lieutenant Beasley, of the Opelika police department was driving along Pepperell Parkway when he noticed people in the area of Clark's Pharmacy. He pulled off and stopped on the road by Dr. Weldon's office to observe what was going on. He saw the car back down beside the drugstore to about the prescription window, stop momentarily, and then come on behind Lieutenant Beasley's car. The officer pulled into Dr. Weldon's second driveway, and this car turned into Dr. Weldon's first driveway and parked at the end of Dr. Weldon's office. Lieutenant Beasley testified he saw defendant get out of his car and walk to the rear of Dr. Weldon's office. Lieutenant Beasley then drove to the front of the phamacy to ascertain what was happening, and was told by Mr. Clark that his drug store had been broken into. Mr. Clark had a pistol in his hand. The officer could see the men inside the building. While Mr. Clark and Lieutenant Beasley were

still standing there defendant drove back to the front of the drug store and stopped. Mr. Clark, still holding the pistol, approached the car on the side opposite the driver. Defendant slid his hand over to the door and leaned toward the window where Mr. Clark was standing. Defendant had an object in his hand which Mr. Clark testified was a pistol. Mr. Clark then laid his pistol on his arm and stepped behind the door separation. Defendant asked: "How could I get in touch with Doctor Weldon?" Mr. Clark answered: "I don't know and would you please leave." At this point Lieutenant Beasley said the men inside the store were trying to get out the back door. Mr. Clark backed away from the car and defendant drove off in the direction of Auburn.

Three or four years previously Doctor Weldon lived in his office building and Mr. Clark stated he had learned there was a family relationship between defendant and Doctor Weldon.

After the men inside the store were apprehended Mr. Clark noticed that all the drawers in his prescription department were pulled out and stacked across from the drive-in window. His drugs had been stacked in a cigar box.

Lieutenant Beasley testified when defendant backed to the vicinity of the drive-in window he was seven or eight feet from the building, on the opposite side of the car. There were perpendicular bars three or four inches apart on the window.

The men who were inside the pharmacy were identified as James McMurtrey and Walter Neal Franks. Officer Beasley testified he was standing at the right front of the building when he heard someone running toward him from the right rear. The officer told the man to stop and he turned to the left and ran across in front of Dr. Weldon's office. Officer Beasley caught Franks in the shrubbery about midway of the Doctor's house.

Officer Dunson of the Opelika Police Department testified he was summoned to Clark's Pharmacy and took McMurtrey into

custody. On the way to police headquarters he and Officer Burrow stopped the defendant, driving a 1966 red over cream Oldsmobile, displaying a Montgomery license plate, going toward Auburn.

No evidence was presented by the defendant.

Defendant's motion to exclude the State's evidence was denied. The request for the general affirmative charge was refused and motion for a new trial was overruled.

The State argues that from the actions of the defendant the jury was authorized in finding defendant was present at the scene of the crime to render aid to the burglars should it become necessary.

Counsel for defendant insists the evidence established only one thing, the defendant's presence near a pharmacy which had been burglarized and in which the burglars were present; that there was no evidence of any contact or communication with the persons in the store, or that he conspired with or even knew Franks and McMurtrey; no evidence defendant knew the drug store had been burglarized; that from the evidence presented defendant was looking for a relative, Dr. Weldon, and, upon seeing the people around the drug store, drove up to ask where he could contact Dr. Weldon. Upon stopping he saw a man coming toward him with a pistol, which could have accounted for the pistol Mr. Clark said he saw in defendant's hand; that it is significant that at the scene of the burglary the defendant's actions were not suspicious enough to warrant his apprehension by a police officer or the owner of the store.

We agree with appellant's contention that the evidence creates mere surmise or suspicion and is not sufficient to prove defendant conspired with, or aided and abetted the perpetrators of the crime.

Mere suspicion, conjecture or probability that the defendant is guilty is not sufficient to overcome the prima facie

presumption of innocence. Holman v. State, 36 Ala.App. 474, 59 So.2d 620.

"The mere fact that a person is present at the scene of a crime but does not in any way participate in or encourage its commission does not make him a party to the crime." 1 Wharton's Criminal Law and Procedure, Sec. 108, p. 234. See also Lee v. State, 18 Ala.App. 566, 93 So. 59.

We do not believe the evidence was sufficient to divest the appellant of the protective presumption of innocence with which he is cloaked. His motion to exclude the State's evidence should have been granted, or failing this, he was entitled to the affirmative charge or to his motion for a new trial.

Reversed and remanded.