298 So.2d 668

**Albert Lee CARTER**

v.

**STATE.**

**6 Div. 618.**

Court of Criminal Appeals of Alabama.

June 25, 1974.

Rehearing Denied July 30, 1974.

**249**

David E. Hicks, Birmingham, for appellant.

William J. Baxley, Atty. Gen., and David W. Clark, Asst. Atty. Gen., for the State.

HARALSON, Supernumerary Circuit Judge.

The appellant was indicted for murder in the first degree, convicted of murder in the second degree, and sentenced to imprisonment in the penitentiary for 21 years.

Appellant's motion to exclude the evidence presented by the State was overruled.

From the evidence offered by the State it appears that the deceased, Jessie Nelson, with her five children lived in a housing project apartment in Birmingham on August 24, 1972. The appellant had been living with the deceased, off and on, for about three years. They occupied one of the bedrooms in the upstairs area of the apartment. On the afternoon of the above date at approximately 4:30 to 5:00 o'clock the appellant came from his work to the apartment, where he found the deceased in the living room. Two of her daughters, Cynthia Nelson and Deborah Nelson, were also in the apartment, Cynthia being in and out of the living room and Deborah remaining upstairs in her bedroom during the ensuing few minutes.

According to the testimony of Cynthia Nelson, the appellant when he appeared at the apartment was told to leave by the deceased and that his clothes and belongings were packed in some boxes and ready for him to take them. He refused to leave, but instead made one or more trips upstairs to the bedroom occupied by him and the deceased and on one trip he procured a .22 caliber pistol, put it in his pocket and came downstairs. It appears after some conversation between him and the deceased in the living room, where no one else was present, that the two daughters, Deborah and Cynthia, heard a gun fire and came immediately into the living room where they found appellant and the deceased. She appeared to have been shot but was still sitting in a chair. A picture introduced by the State as an exhibit showed what appears to be a gunshot wound in the upper part of the left chest of the deceased.

Appellant immediately tried to call an ambulance over the telephone and was assisted by Cynthia. The police were also called and arrived within a short time. They found the deceased lying on the living room floor on her back with the appellant trying to give her mouth to mouth resuscitation. More than one officer testified that appellant said he did it. They further testified that he became highly emotional before they attempted to arrest him, that he wanted to bathe the feet of the deceased before she was taken in the ambulance, and they permitted him to do this and then placed him under arrest and took him to police precinct headquarters. It appears that he made one or more statements admitting the killing at a time the police were trying to find out what had happened and that when he continued to talk, he was given his

rights and again made the statement that he had shot her but that he didn't mean to do it.

The coroner for Jefferson County testified that he first saw the body at the apartment while it was lying on the floor and that it appeared that there was a gunshot wound in the upper chest. He later tried to probe the wound at the undertaking parlor where the body was taken but testified that the wound had closed and that he was unsuccessful in trying to probe and trace the bullet. His testimony was that the wound was made by a small caliber gun such as a .22 or .25.

One of the police officers testified that when he arrived at the scene a .22 caliber pistol was given to him by appellant who picked it up from the floor near the head of the deceased. The pistol was introduced into evidence and identified as the one given to the officer on this occasion.

The testimony of the appellant was in agreement with that offered by the State with regard to the fact that he had been living in the apartment with the deceased, that he came in from work on the day in question, was told to leave by the deceased and refused to do so. He also testified both on direct and cross-examination that he shot the deceased with the pistol offered in evidence, but that he did not mean to shoot her. He insisted that he was merely playing with the gun and must have squeezed the trigger too hard and caused it to fire. He admitted loading the gun with five shells after he got it from the upstairs bedroom. In substance his testimony was that the actual shooting was an accident.

Officer Ashworth, of the Birmingham Police Department, testified that he was one of the officers who took the appellant into custody and that he was in an upset condition, crying, and that he heard appellant tell someone over the telephone that he had shot the deceased but that he didn't mean to do it and that they had been playing with the gun.

Murder in the second degree is the unlawful killing of a human being with malice, but without deliberation. Harris v. State, 48 Ala.App. 723, 267 So.2d 512.

■ "The malice necessary to be proved to support a murder conviction has been defined in Miller v. State, 38 Ala.App. 593, 90 So.2d 166, as follows:

' "Legal Malice" as an ingredient of murder is an intent to take human life without legal excuse, justification or mitigation, and it may be presumed from the use of a deadly weapon, unless the evidence which proves the killing rebuts the presumption. Coates v. State, 1 Ala.App. 35, 56 So. 6; Warren v. State, supra [34 Ala.App. 447, 41 So.2d 201].' " Harris v. State, supra.

■ Under the circumstances delineated in the evidence offered by the State, we are of the opinion that the question of whether the appellant intentionally shot the deceased and whether or not surrounding circumstances rebutted the presumption of malice were questions for the jury's consideration.

This case was properly submitted to the jury and there was sufficient evidence, although in part circumstantial, if believed by the jury, to support the verdict.

It follows that the court did not err in overruling the motion of the appellant to exclude the State's evidence.

In brief appellant insists that the court erred in admitting the testimony of the coroner with regard to the cause of deceased's death.

■ It is true that the mere fact that a person holds the office of coroner does not qualify him to express an opinion as to the cause of death, nor is he considered an expert witness unless shown to be qualified by training and by experience.

In the case of Hicks v. State, 247 Ala. 439, 441, 25 So.2d 139, 140, the court said, "The nature of a wound or injury, its probable cause and effect can be stated by expert medical witnesses, or witnesses shown

to be familiar with such questions; such as, an undertaker or others showing competency. * * *"

"The question as to whether a witness is shown to possess the requisite qualifications is a preliminary question said to be largely within the discretion of the trial court. Hicks v. State, supra; Wilson v. State, 243 Ala. 1, 8 So.2d 422; DeSilvey v. State, 245 Ala. 163, 16 So.2d 183; Willingham v. State, 261 Ala. 454, 74 So.2d 241." Smith v. State, 282 Ala. 268, 210 So.2d 826.

The coroner in this case was examined with regard to his familiarity with the appearance of gunshot wounds, the number of such wounds seen, his experience of probing such wounds, and the length of his experience as coroner. We are unwilling to say that the court abused its discretion in admitting the testimony of this witness.

Several charges requested in writing by the appellant were refused by the court. Most of these charges deal with the law relative to the State's duty to prove its case beyond a reasonable doubt and were covered by the excellent oral charge along this line.

Charge number 3, in addition to dealing with the principle of reasonable doubt, states "and that if there is probability of his innocence, this is just ground for reasonable doubt, and requires acquittal." Charges containing such statements whether verbatim or in substance have been condemned by the court in many cases including Voss v. State, 21 Ala.App. 481, 109 So. 891; Edwards v. State, 205 Ala. 160, 87 So. 179; Stokely v. State, 254 Ala. 534, 49 So. 2d 284.

Charge number 8 is as follows: "A reasonable doubt has been defined to be a doubt for which a reason could be given; a probability of the defendant's innocence is a just foundation for a reasonable doubt of his guilt, and therefore, for his acquittal." It is faulty in that it is not hypothesized on a finding from the evidence. (See Voss, Edwards, and Stokely, supra, in addition to the following rule.)

"It is the established rule in this state that it is not reversible error either to give or to refuse a charge which fails to hypothesize the jury's belief (in criminal cases) or reasonable satisfaction (in civil cases) 'from the evidence.'" Locklear v. Nash, 275 Ala. 95, 152 So.2d 421; Johnson v. State, 257 Ala. 644, 60 So.2d 818.

We find no error in the court's action in the refusal of appellant's requested written charges.

We have examined the record carefully in this case and find no error of a reversible nature. This case is due to be affirmed.

The foregoing opinion was prepared by Honorable W. J. Haralson, Supernumerary Circuit Judge, serving as a Judge of this Court under Section 2 of Act No. 288, Acts of Alabama, July 7, 1945, as amended; his opinion is hereby adopted as that of the Court.

The judgment below is hereby

Affirmed.

All the Judges concur.