[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 917 
Appellant was convicted of robbery and the court sentenced him to fifteen years in the penitentiary. He was represented by retained counsel during the trial proceedings and at arraignment pleaded not guilty. After sentence was imposed he gave notice of appeal. Appellant was then found to be indigent and trial counsel was appointed to represent him on appeal. He is in this court with a free transcript.
Appellant did not testify in his behalf but offered some testimony in the nature of an alibi.
The evidence adduced by the state tended to show that, in the early morning hours of August 24, 1978, at approximately 2:15, two black men robbed Shoney's Restaurant located on Parkway East across from Roebuck Shopping Center in Birmingham, Jefferson County, Alabama. Mr. Alfred W. Adair was the night manager and Mr. Lee Drew was the busboy and dishwasher. These two employees closed the restaurant as 12 o'clock midnight on August 23, 1978, and remained on the premises until 2:15 a.m. *Page 918 
getting things in order to open the restaurant the next day. They picked up paper and other debris from the parking lot and went behind the building to a Dempster Dumpster to dispose of the waste. While at the dumpster they were suddenly confronted by the black men and were forced at gunpoint to re-open the restaurant and all four men entered. The man with the gun had a lady's sheer stocking over his face and the other man was also masked.
After the office lights were turned on, the men walked to the office where Mr. Adair was forced at gunpoint to open the safe. The two bandits removed from the safe approximately two thousand dollars. They then ordered Mr. Adair and Mr. Drew to lie on the floor where they tied them up with tape and told them to remain on the floor while they departed from the premises. Mr. Adair and Mr. Drew managed to remove the tape from their hands and feet. Mr. Adair then called the manager of the restaurant and the Police Department. When the officers arrived they were given a description of the robbers.
On October 17, 1978, during a lineup conducted by Sergeant J.C. Ferrell at the City of Birmingham Police Department, appellant was identified by Mr. Adair as one of the men who took part in the robbery.
In an independent lineup on October, 18, 1978, Mr. Lee Drew also identified appellant from a lineup which was also conducted by Sergeant J.C. Ferrell. This lineup was composed of different members with the exception of appellant.
The appellant was also identified by both witnesses in court. Appellant's counsel timely objected, moved to exclude, and at the close of the trial moved for a new trial. Additionally, the out-of-court identification of appellant was brought out by the prosecutor at the trial during rebuttal. Trial counsel timely objected to this also, preserving both of these issues for review on appeal.
There is very little direct evidence to indicate that the lineup was suggestive of the appellant. Both witnesses were told they were to view a lineup in which the man who robbed them may or may not be present. It is natural for persons called to view a lineup to understand that the suspect is in the lineup, and the fact that they are told does not contaminate the lineup. Fletcher v. State, Ala.Cr.App.,337 So.2d 58.
In addition to informing Lee Drew of the lineup, Sergeant Ferrell testified that he told Lee Drew the following:
 "I told him that there were six people in the lineup room, and that the person that robbed him may, or may not, be in there, but for him to observe them, that they may have changed their facial features, that they may have had haircuts and may have shaved, and don't go by their hair, just to look at their facial features to identify them."
At the time of the lineup Lee Drew was seventeen years old. He had never viewed a lineup before. It is expected that a police officer conducting a lineup would give general instructions to an inexperienced viewer of lineups. General instructions that do not suggest a suspect to a witness or single out any particular member of the lineup or eliminate any individuals from consideration do not invalidate the lineup proceeding. Where the instructions, however, pertain directly to the defendant it is improper. In the case at bar the police officer's comments related to appellant. His comments, however, were general and not overly suggestive toward appellant. The officer in this case was merely stating the obvious and there does not appear to be a deliberate effort to influence the result of the lineup. Additionally, there is testimony on voir dire from Lee Drew that the identification could be made on the basis of facial features.
Mr. Adair testified that he recognized two of the members of the six man lineup from the fifteen years he worked as a warden for the jail. He was not, however, overly familiar with the two men and did not even know their names. There is no evidence that there was a deliberate attempt to place someone Mr. Adair knew in the lineup. When it is assumed one could eliminate *Page 919 
the two who were recognized from being chosen by the witness, there remained four members of the lineup to choose from and also the choice between choosing or not choosing anyone. The fact that two members of the lineup were recognized does not in and of itself contaminate the lineup procedure. Young v. State, Ala.Cr.App., 346 So.2d 509.
The lineup viewed by Mr. Adair was composed of six black males, wearing white coveralls, ranging in height from five feet ten inches to six feet one inch. Their weights ranged from one hundred forty pounds to one hundred seventy-five pounds. On the lineup sheet no other distinguishing characteristics were noted. Mr. Adair did, however, testify that the lineup viewed by him contained about three men with beards.
The lineup viewed by Mr. Lee Drew was also composed of six black males dressed in white coveralls. There were three men six feet in height, two men five feet ten inches, and one man five feet eight inches in height. Their weights ranged from one hundred thirty-eight to one hundred seventy-five pounds.
Nothing about the composition of either lineup would suggest appellant to the viewers of that lineup. Each lineup was composed of men of the same race as appellant and contained persons of similar height and weight. All members of the lineup were dressed alike, and in the lineup in which appellant had a beard there were approximately three other members with beards.
Reliability is the linchpin in determining the admissibility of identification testimony. Manson v. Brathwaite, 432 U.S. 98,97 S.Ct. 2243, 53 L.Ed.2d 140 (1977); Williamson v. State, Ala.Cr.App., 384 So.2d 1224. In assessing the reliability of the identification the effect of suggestiveness in the pre-trial identification must be weighed against the indicators of the ability of a witness to make an accurate identification. These indicators include the opportunity of the witness to view the criminal at the time of the crime, the witness's degree of attention, the accuracy of his prior description of the criminal, level of certainty demonstrated at the confrontation, and the time between the crime and the confrontation. Neil v.Biggers, 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972);Manson v. Brathwaite, supra. The totality of the factors mentioned above and the suggestiveness of the pretrial identification must be weighed against one another to determine the admissibility of the identification. Manson v. Brathwaite, supra.
The evidence of the lineup procedure taken as a whole does not show that a highly suggestive procedure was used. The composition of both lineups was fair and did not call attention to appellant. The instruction given to the witnesses that appellant may or may not be in the lineup was not overly suggestive. Fletcher v. State, Ala.Cr.App., 337 So.2d 58. Although it might have related to appellant's appearance, the instructions by Sergeant Ferrell to Lee Drew concerning the way hair and beards may change appearances was merely stating the obvious. Also, Lee Drew described in detail the suspect's facial features. Under the circumstances these instructions did not influence the outcome of the lineup. Likewise, Mr. Adair's recognition of the suspects in the six man lineup did not invalidate the lineup identification. Young v. State, Ala.Cr.App., 346 So.2d 509. Additionally, there was some testimony that prior to Lee Drew's viewing the lineup Mr. Adair might have told him he had chosen someone from the lineup. This, also, is not suggestive of appellant.
Against the evidence of suggestiveness, however, must be weighed the indicators of the ability of the witness to make an accurate identification. Manson v Brathwaite, supra.
One of the most important factors in assessing the ability of a witness to accurately identify a suspect is the opportunity of the witness to view the person at the time of the crime. In the case at bar, the entire robbery took place over a period of approximately fifteen to twenty minutes. Both witnesses had told the police prior to the identification that they could identify the person with the gun. *Page 920 
Mr. Adair testified on voir dire that, when he first saw the two men in the back of Shoney's Restaurant, they were eight to ten feet away. He further stated that the lighting outside was too dim for him to recognize either of the two robbers.
The evidence further shows that the two men walked with Mr. Adair and Mr. Drew back into the restaurant with the man identified later as appellant behind Mr. Adair followed by Mr. Drew with the other man behind him. Mr. Adair testified that, after entering the building, the lighting was sufficient for him to identify appellant through his mask which slightly pressed the features of his face. Mr. Adair stated that he looked directly at appellant on three occasions while in the building.
The first occasion took place when Mr. Adair was turning on the lights. This viewing of appellant lasted for approximately one to two minutes from a three foot distance. Mr. Adair described the lighting at that area as "completely illuminated" by a line of fluorescent lights on the ceiling above the light panel. He testified that, at this point, "I got a good look."
The second observation of appellant took place in the office which is approximately ten feet by twelve feet in size and lighted by three forty-eight inch fluorescent bulbs. Mr. Adair testified that, while in the office, he stood face to face and looked at appellant for approximately thirty seconds.
The third observation took place in the office under the same lighting conditions as the second. After Mr. Adair opened the safe he had a face to face view, which only lasted a second.
Mr. Adair's viewing of the suspect on three occasions at short distance under good lighting conditions supports his positive identification of appellant in the lineup and the later identification of appellant in court.
Mr. Lee Drew, unlike Mr. Adair, identified appellant on the basis of his observation of him from outside the restaurant at the dumpster. Mr. Drew testified that he viewed appellant for approximately from thirty seconds to a minute less than five feet away under a street light approximately fifteen feet away. He testified he could see through the light colored nylon stocking and could identify the suspect. There is some conflict in testimony over the lighting at the dumpster. Mr. Adair testified that he could not see the suspect outside. He was, however, several feet further away than Mr. Drew. Mr. Adair also testified that the street light closest to Mr. Drew was from twenty to forty feet away. This testimony is nothing more than a difference in estimation of distances.
Mr. Drew's identification of appellant only two months after the robbery was a positive one with no expression of doubt. Mr. Adair's independent identification of appellant the preceding day was also a positive one.
While the record does not provide a detailed description of appellant, he was described by State's Exhibit A, which are lineup sheets, on voir dire, as twenty-one years old, six feet in height and weighing one hundred and seventy-five pounds. While the descriptions given by the witnesses vary somewhat with the description given on the lineup sheet, they are not so inconsistent that they preclude the possibility of appellant being the person described by the witnesses to the police. The only major discrepancy is Mr. Adair's estimation of the suspect's height as some three or four inches shorter than that of appellant.
One of the problems of an eyewitness identification is the witness must testify about an encounter with a total stranger under circumstances of emergency or emotional stress. Manson v.Brathwaite, 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140; Stovallv. Denno, 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199. The witness's recollection of the stranger can be distorted easily by the circumstances or by later actions by the police. Such problems are the reason for weighing any factors of suggestiveness against the indicators of reliability.
Weighing the slight amount of suggestiveness in the lineup procedure against the factors which indicate the ability of the witnesses to make an accurate identification, *Page 921 
we hold that the identification testimony at the trial was admissible. Manson v. Brathwaite, supra.
After Lee Drew identified appellant in the lineup he was shown a photograph of appellant. Lee Drew later identified appellant in court. The stated reason for showing appellant's photograph was to demonstrate how facial features may change with a beard or change in hair length. While the showing of the photographs to Lee Drew was unnecessary and suggestive toward appellant in the later in-court identification, the in-court identification does not violate due process as long as the identification possesses sufficient aspects of reliability.Manson v. Brathwaite, supra; Neil v. Biggers, supra. In the case at bar, prior to being shown the photograph, Lee Drew had already picked appellant out of the lineup. The factors assessing the accuracy of Lee Drew's identification set forth above indicate that this identification was sufficiently reliable and therefore was properly admitted into evidence. Appellant admits, in brief, that "there is no overwhelming proof that the lineups were unduly suggestive."
Appellant next contends that the trial court was in error in allowing Mr. Lee Drew and Mr. Adair to testify to their out-of-court lineup identifications of appellant on rebuttal. Appellant also contends that it was error to allow Sergeant Ferrell to testify to the lineup identifications made by the witnesses.
Both witnesses made an in-court identification of appellant as one of the men who robbed Shoney's Restaurant on August 24, 1978. After the testimony of each witness identifying appellant, counsel for appellant cross-examined each of them in detail on the identification of appellant which was the key issue at trial. The cross-examination of the witnesses put into question their ability to identify appellant under the circumstances that surrounded the robbery. During the presentation of the defense this identification was also put in question by appellant's attempt to establish an alibi. During the rebuttal the prosecution called Mr. Drew, Mr. Adair, and Sergeant Ferrell to the stand to testify to the out-of-court identifications of appellant to rebut the attack on their in-court identifications. Counsel timely objected and preserved this issue for review.
This issue was addressed in the recent case of Carlisle v.State, Ala.Cr.App., 371 So.2d 975, in which it was stated:
 "A witness may not corroborate his in-court identification by evidence of an earlier identification of the accused. Aaron v. State, 273 Ala. 337, 139 So.2d 309, cert. denied, 371 U.S. 846, 83 S.Ct. 81, 9 L.Ed.2d 82; Yarbrough v. State, 105 Ala. 43, 16 So. 758; Zuck v. State, 57 Ala. App. 15, 325 So.2d 531, cert. denied, 295 Ala. 430, 325 So.2d 539. Such evidence is competent, however, to rebut an inference raised on cross-examination that the identification was mistaken or contrived. This right of rehabilitation extends to testimony by a third person as well as that by the impeached witness. Aaron, supra; Howell v. State, Ala.Cr.App., 369 So.2d 297. Once the credibility of the victim was attacked on cross-examination, the testimony of the officer regarding the prior identification was properly admitted in rebuttal."
The argument that the out-of-court identification testimony should have been presented as part of the case in chief is without merit. "The order of proof and rebuttal testimony rests largely in the sound discretion of the trial court, and this rule applies to testimony which more properly should have been offered as part of the case in chief." McBryar v. State, Ala.Cr.App., 368 So.2d 568, 575, cert. denied, 368 So.2d 575
(Ala. 1979), Snow v. State, 50 Ala. App. 381, 279 So.2d 552
(1973), cert. denied, 291 Ala. 798, 279 So.2d 558 (1973).
In the case at bar the evidence of the out-of-court identification was admissible only to rebut appellant's attempt to establish an alibi and attack the accuracy of the witnesses' in-court identification. Therefore, such evidence would logically be admitted on rebuttal. *Page 922 
Appellant also contends that the trial court committed reversible error in refusing defendant's requested jury charges, numbers 9, 15, 17 and 19.
Defendant's requested jury charge number 9 reads:
 "The Court instructs the jury that, if there is one single fact proven to the satisfaction of the jury which is inconsistent with the defendant's guilt, this is sufficient to raise a reasonable doubt, and the jury should acquit the defendant."
Some of the older cases in the appellate courts of Alabama held this charge to be good, but it has been condemned in later cases and was expressly overruled in Ex parte Davis, 184 Ala. 26,63 So. 1010 (1913). Black v. State, 52 Ala. App. 528,294 So.2d 777 (1974); Cox v. State, 19 Ala. App. 205, 96 So. 83
(1923). This charge invades the province of the jury and was properly refused. This is especially true since the court instructed the jury that "[A] reasonable doubt may arise out of all the evidence, or it may arise out of any part of the evidence." King v. State, Ala.Cr.App., 356 So.2d 1216. There is no cause for reversal when a refused charge is covered by another charge covering the same rule of law substantially and fairly. §§ 12-16-13, Code of Alabama (1975).
Defendant's requested charge number 15 reads as follows:
 "The Court instructs the jury that if you believe from the evidence that there is a probability of defendant's innocence you should return a verdict of not guilty."
The trial court charged the jury that it is presumed that the defendant is not guilty and this presumption "can be overcome only by evidence of the defendant's guilt beyond a reasonable doubt." Such a charge places an even greater burden on the state than the requested charge by appellant. Edwards v.State, 205 Ala. 160, 87 So. 179. The trial court was proper in refusing defendant's requested charge number 15. Carter v.State, 53 Ala. App. 248, 298 So.2d 668; Edwards v. State,205 Ala. 160, 87 So. 179; Russo v. State, 236 Ala. 155,181 So. 502; Stokley v. State, 254 Ala. 534, 49 So.2d 284; Wilson v.State, 243 Ala. 1, 8 So.2d 422. This is necessarily true in view of the trial court's charge on the necessity of proof of defendant's guilt beyond a reasonable doubt. Walker v. State, Ala.Cr.App., 358 So.2d 800; Edwards v. State, supra.
Defendant's requested charge number 17 is very similar to that of number 15 and addresses the probability of guilt. Like charge number 15, the charge given the jury requiring guilt beyond a reasonable doubt places a stronger burden of proof on the state than the requested charge and substantially and fairly gives the same rule of law to the jury. § 12-16-13, Codeof Alabama (1975).
Defendant's requested charge number 19 reads:
 "The Court instructs the jury that the defendant, Steve Thomas, should not be convicted, unless the evidence in this case excludes to a moral certainty every reasonable hypothesis but that of his guilt; no matter how strong the circumstances are they do not come up to the full measure of proof which the law requires if they can be reasonably reconciled with the theory that Steve Thomas is innocent."
This charge has been approved by the Supreme Court of this state, and its refusal as a jury charge has been held to be error in many cases. Harris v. State, Ala.Cr.App.,358 So.2d 482, cert. denied, 358 So.2d 487 (Ala. 1978); Wilson v. State,243 Ala. 1, 8 So.2d 422; McCarty v. State, 35 Ala. App. 201,45 So.2d 175; Holman v. State, 36 Ala. App. 474, 59 So.2d 620. Where so little of the case, however, is derived from circumstantial evidence, the refusal to give that charge is not reversible error. Harris v. State, 46 Ala. App. 497,243 So.2d 770; Harris v. State, Ala.Cr.App., 358 So.2d 482, cert. denied,358 So.2d 487 (Ala. 1978). In the case at bar, the whole case rested on the identification of appellant by two eyewitnesses and not circumstantial evidence. Therefore, the charge was correctly refused. *Page 923 
When the jury retired to deliberate, a copy of the indictment was taken into the jury room. A statement setting forth the amount of bail to be one hundred thousand dollars ($100,000) was on the back of that indictment. Appellant claims this was in error and requires reversal of the trial court.
It is proper for the indictment to go to the jury room with the jury. Wilson v. State, 52 Ala. App. 680, 296 So.2d 774;Sanders v. State, 131 Ala. 1, 31 So. 564. Appellant failed to make a timely objection or move to have the written matter covered over to keep it from the jury. In view of this, the matter will not be reviewed on appeal. Wilson v. State,52 Ala. App. 680, 296 So.2d 774; Eady v. State, 284 Ala. 327,224 So.2d 876.
The jury was instructed by the trial court and retired to the jury room for deliberation. After several hours of deliberating the trial court decided to allow the jury to go home for the night and continue the next day. Appellant was not in court, but in jail at that time. Appellant would have to be present before the court could speak or instruct the jury. To avoid having to bring appellant to court, both the prosecutor and the defense attorney agreed to leave the courtroom. This way the absence of appellant from the courtroom would not be called to the attention of the jury. The trial court told the bailiff to instruct the jury to go home and return the next morning to continue their deliberations. The judge then left the courtroom.
The bailiff followed the judge's instructions and informed the jury that they were to go home and to return the next morning. The jury requested they be allowed to deliberate further before going home for the evening. The bailiff repeated the judge's instructions. The jury then left for the evening and returned the next day to continue their deliberations. Appellant claims error for refusal of the trial court to allow the jury to continue to deliberate that evening rather than continue the next morning.
"The duration of deliberations by the jury is committed to the sound discretion of the trial court. The exercise of that discretion will not be disturbed on appeal except for clear abuse. Martin v. State, 29 Ala. App. 395, 396, 196 So. 753
(1940)." Hammons v. State, Ala.Cr.App., 371 So.2d 986.
In the case at bar the bailiff was merely passing along instructions to the jury. By agreement both the defense attorney and the prosecutor had left the courtroom. It would have been improper for the trial judge to speak with the jury or instruct them without the presence of appellant and his counsel. Graves v. State, Ala.Cr.App., 377 So.2d 1129, cert. denied, 377 So.2d 1130 (Ala. 1979); Donahoo v. State, Ala.Cr.App., 371 So.2d 75.
A judge's refusal to communicate with the jury at their request is not improper. Wylie v. State, 24 Ala. App. 187,132 So. 438. Under the circumstances, the trial court committed no error in following the agreed-to procedure for excusing the jury for the night.
A careful examination of the record reveals no error prejudicial to the substantial rights of appellants, and the judgment of conviction is affirmed.
AFFIRMED.
All the Judges concur.