Appellant was arrested on March 6, 1981, by the City of Birmingham Police Department in Birmingham, Alabama, and charged with first degree robbery. He was tried before a jury in the Circuit Court of Jefferson County on December 17, 1981, and was found guilty and sentenced to life imprisonment without parole under the Habitual Offender Act. On the entry of judgment appellant gave notice of appeal. At that time appellant's trial counsel was relieved from further duties and the Honorable James Stevens was appointed as his attorney on appeal. On January 3, 1982, appellant filed a pro se motion for a new trial which was denied on January 21, 1982. On January 15, 1982, appellant's trial counsel filed a motion for a new trial which was denied on March 1, 1982. This appeal followed.
Mr. Willis Lawrence of Boaz, the victim of the robbery, testified that, on February 28, 1981, he was in Birmingham to pick up a trailer for his employer's Birmingham operation. Driving a 1964 Chevrolet pickup truck, Mr. Lawrence went to the residence of his wife's grandmother in the 2200 block of 7th Avenue, North. Mr. Lawrence recalled that, as he was about to get in his truck to leave after visiting his wife's grandmother, three black males approached him, pulled a gun and told him to get in the truck. One of the men had approached him first to get a light for his cigarette. As he was attempting to light the man's cigarette, the other two men approached him. This occurred at approximately 5:30 p.m.
Mr. Lawrence stated that he was standing a "step or two" from the individual who pulled the gun, and at trial Mr. Lawrence identified that person as the appellant. Appellant told him to get in the truck or he would be shot. Mr. Lawrence and the three men got in the truck with appellant driving *Page 707 
and Mr. Lawrence seated between the other two. Once in the truck, appellant gave the gun to one of his companions; and then they took his billfold, removed $250.00 from it, and, with Mr. Lawrence captive, drove away.
As the truck drove away, Mr. Lawrence was forced to crouch down in the floorboard with his hands on his head. He was struck once with the gun butt when his hands accidentally slipped, and, after asking to be let go to see his wife in the hospital, he was threatened by one of the robbers who had a knife that he would be scalped and maimed.
After riding for some twenty to thirty minutes, they arrived in the Collegeville area near Tarrant City. There the robbers forced Mr. Lawrence to get out of the truck, took his cigarettes, knife, watch, belt and everything else in his pockets, and then made him get in a garbage dumpster in a lightly traveled area behind some apartments.
Mr. Lawrence climbed over in the dumpster, onto burning trash, and was told to lie down. After Mr. Lawrence was inside the dumpster one of the men shot him in the back of the head and the stomach. After hearing his truck drive away, Mr. Lawrence managed to escape from the dumpster, the police were called, and he was hospitalized.
Mr. Lawrence spent nine days in the hospital and, after his release, he was visited at his home in Boaz by Officer P.T. Hurst of the Birmingham Police Department. Officer Hurst showed Mr. Lawrence some "mugshots" of black males which gave their front view and profile. With both Officer Hurst and Mr. Lawrence sitting on the living room couch, Officer Hurst laid the six photograph cards out in a row on the coffee table. Officer Hurst told Mr. Lawrence nothing about the photographs other than, "I've got some photographs I want you to look at."
Mr. Lawrence stated that he picked up each photograph and held them close to his face looking at them "real good." After so doing, he picked out two photographs. There were no markings on the front of the photographs, and Mr. Lawrence stated he did not look at the backs of them.
Of the two photographs he picked out of the array, Mr. Lawrence was certain that one of the two was one of the robbers. The other photograph was a picture of appellant, but Mr. Lawrence felt that he could not be definite the person in the picture was one of the robbers.
Appellant was arrested on March 6, 1981. At appellant's preliminary hearing, Mr. Lawrence was seated in a room in the courthouse with Officer Hurst seated near him when twelve to fifteen prisoners were brought into the room in a line. At that time, Mr. Lawrence recognized the appellant in the line of prisoners as being one of the robbers, and he pointed appellant out to Officer Hurst. All of the prisoners were in jail clothing and were wearing handcuffs, and there were more blacks in the group than whites. Mr. Lawrence stated that no one had made any suggestion to him that one of the prisoners might be one of his robbers.
On the afternoon of February 28, 1981, Miss Florence Safford, 68 years of age, who lives in an apartment across the street from where Mr. Lawrence visited his wife's grandmother, testified that she was on her porch when she saw Mr. Lawrence come out of the house and go to his truck. Miss Safford stated she also saw three young black men come up and get in the truck. Miss Safford recognized one of the three young men as a person she had seen on previous occasions and knew by the name of "Sonny." She did not know the other young men. The young man she knew as "Sonny" got in the truck on the driver's side. She walked over toward the truck, but as she approached it, the truck drove away with Mr. Lawrence and the three young black men inside.
On March 2, 1981, the police showed Miss Safford some photographs, and she picked out the man she knew as "Sonny" as being one of the robbers. He was arrested on March 6, 1981, near Miss Safford's home. At trial, Miss Safford identified "Sonny" as being the appellant. *Page 708 
During the trial at the end of the State's case, defense counsel moved to exclude the State's evidence and moved for a directed verdict. He did not assign any grounds. At the end of all the evidence, defense counsel stated, "I'd like to make a motion, renew our motion." Both motions were overruled.
At the completion of the State's case, appellant introduced four or five alibi witnesses who stated he was elsewhere during the time of the commission of the robbery and in fact did not commit the robbery.
Appellant bases his appeal on three arguments. They are: (1) the State lacked probable cause to arrest the appellant and by so doing violated his due process rights accorded him under the Fifth Amendment to the United States Constitution; (2) the identification of the appellant by the victim and one witness was unduly suggestive and prejudiced by intervening circumstances and facts surrounding the pre-arrest photo lineup and the subsequent in-court identification at the appellant's preliminary hearing; and (3) a reasonable doubt as to appellant's guilt existed due to appellant's alibi evidence coupled with all the other evidence, and, therefore, an acquittal of appellant is required.
Appellant contends that the evidence adduced at trial is insufficient to constitute probable cause to arrest the appellant for this robbery, and, as such, is a violation of his right to due process under the Fifth Amendment of the United States Constitution. In Beasley v. State, Ala.Cr.App.,408 So.2d 173 (1981), certiorari denied Ex parte Beasley, Ala.,408 So.2d 180 (1982), it was held that, before an appellate court will review alleged violations of one's constitutional rights, they must first be seasonably raised in the lower court. Hollisv. State, Ala.Cr.App., 380 So.2d 409 (1980). In the present case, the record shows that appellant made two motions. The first motion was made at the end of the State's case when defense counsel moved "to exclude the State's evidence and move for a directed verdict." No grounds were assigned for this motion. The second motion was made at the end of all the evidence when defense counsel stated, "I'd like to make a motion, renew our motion." The record contains no objection as to the alleged violation of appellant's constitutional rights, and, hence, no error is preserved for review.
Appellant argues that the victim's in-court identification of appellant should have been suppressed based on the fact that prior identification procedures were unduly suggestive. Reliability is the linchpin in determining the admissibility of identification testimony. Manson v. Brathwaite, 432 U.S. 98,97 S.Ct. 2243, 53 L.Ed.2d 140 (1977); Williamson v. State, Ala.Cr.App., 384 So.2d 1224 (1980). In assessing the reliability of the identification, the effect of suggestiveness must be weighed against the indicators of the ability of a witness to make an accurate identification. These indicators include the opportunity of the witness to view the criminal at the time of the crime, the witness's degree of attention, the accuracy of his prior description of the criminal, level of certainty demonstrated at the confrontation, and the time between the crime and the confrontation. Neil v. Biggers,409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972); Manson v.Brathwaite, supra. Thomas v. State, Ala.Cr.App., 399 So.2d 915
(1981).
Two prior opportunities for the victim to possibly make pretrial identification occurred. The first opportunity was at the victim's home some twelve days after the robbery where Officer Hurst presented the victim a photo array of mugshots, and the second was at the preliminary hearing where a group of some twelve to fifteen prisoners were viewed by the victim as the docket was being called.
The testimony at trial and at the voir dire hearing concerning the photo lineup at Mr. Lawrence's home does not show that a highly suggestive procedure was used. Testimony shows that the composition of the photographs was fair in that they did not call attention to appellant and that there was no suggestion made as to whom the victim should pick out of the group of photographs. *Page 709 
As to the victim's immediate positive identification of appellant when appellant was brought into the courtroom in the group of twelve to fifteen prisoners makes it equally clear that nothing suggestive took place on this occasion. The evidence indicates that, at the time of the victim's identification of appellant, no one made a suggestion as to whom the victim should choose as his attacker. Furthermore, all of the prisoners were in jail clothing and wearing handcuffs, and there were more blacks in the group than whites.
Against the evidence of suggestiveness, however, must be weighed the indicators of the ability of the witness to make an accurate identification. Thomas v. State, supra. A most important factor in assessing the ability of the witness to accurately identify a suspect is the opportunity of the witness to view the person at the time of the crime. Thomas v. State, supra. In the case at bar, the victim testified that, when the robbers approached, the appellant pulled a gun on him while he was standing only a "step or two" away from appellant. The evidence indicates that it was daylight and not raining. Mr. Lawrence also stated that, when he realized what was happening, he "tried to look enough at their face that I would remember it if I seen it." Mr. Lawrence's identification only one and a half months after the robbery at the preliminary hearing was a positive one with no expression of doubt. While the record does not provide a detailed description of appellant, he was described by Mr. Lawrence to Officer Hurst several days after the robbery in the hospital where he was recuperating from surgery. Even though the descriptions given by Mr. Lawrence at trial vary somewhat from the initial description given to Officer Hurst, they are not so inconsistent that they preclude the possibility of appellant being the person initially described by the witness to the police. The only major discrepancy is Mr. Lawrence's estimation of the suspect's age as some ten years younger than that of appellant.
One of the problems of an eyewitness identification is the witness must testify about an encounter with a total stranger under circumstances of emergency or emotional distress. Mansonv. Brathwaite, supra; Stovall v. Denno, 388 U.S. 293,87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967); Thomas v. State, supra. The witness's recollection of the stranger can be distorted easily by the circumstances or by later actions by the police. Such problems are the reason for weighing any factors of suggestiveness against the indicators of reliability. Thomas v.State, supra. Weighing the slight amount of suggestiveness in the photograph lineup and the identification at the preliminary hearing against the factors which indicate the ability of the witness to make an accurate identification, we hold that the identification testimony at the trial was admissible. Manson v.Brathwaite, supra; Thomas v. State, supra.
The fact that Mr. Lawrence was unable to make a positive identification of defendant from the photograph lineup conducted at his home twelve days after the robbery does not require the exclusion of his in-court identification, but, rather, goes to the weight and credibility of his testimony.Carter v. State, Ala.Cr.App., 406 So.2d 1076 (1981).
Appellant also contends that the identification of appellant by the witness Miss Florence Safford was unduly suggestive and prejudiced by intervening circumstances and facts surrounding the pre-arrest photograph lineup and the subsequent in-court identification. In the absence of an appropriate objection during trial, the issue of whether an in-court identification was tainted by a pretrial photographic display or lineup is not preserved for review. Helton v. State, Ala.Cr.App.,372 So.2d 390 (1979). The record contains no objection to Miss Safford's in-court identification or motion to suppress during the trial. Therefore, this issue is not reviewable by the court.
Appellant contends that his alibi evidence taken with all the other evidence introduced at trial creates a reasonable doubt as to appellant's guilt, and, therefore, an acquittal of the appellant is required. *Page 710 
In Starling v. State, Ala.Cr.App., 398 So.2d 337 (1981) it was held that conflicting evidence always presents a jury question unless the evidence palpably fails to establish a prima facie case. It is undisputed that the first degree robbery took place. The conflict in evidence is between the in-court identification of appellant by the victim and witness and the alibi testimony of defense witnesses who contend appellant was elsewhere when the abduction and robbery took place. With the in-court identification of appellant as one of the robbers, the State completed its prima facie case. Where there is a conflict in evidence, the inferences to be drawn from the evidence, the weight of the evidence, and the credibility of the witnesses are all questions for the jury. Higginbotham v. State, Ala.Cr.App., 346 So.2d 525 (1977).
Appellant received a fair trial and that is all that he was due. There is no error in the record and the judgment of conviction is affirmed.
AFFIRMED.
All the Judges concur.