BARRON, Judge.
The appellant was indicted for rape in the first degree. He was charged with engaging in forcible intercourse with a seven-year-old female. Upon conviction, he was sentenced to life imprisonment.
It was charged that appellant abducted the prosecutrix on June 4, 1981, as she was running an errand for her father to a neighborhood grocery store, and was taken to a house nearby where the incident occurred. Three men, who were friends of the victim, subsequently observed her walking with appellant, wearing clothing belonging to the appellant. The prosecutrix was taken from appellant at that time by her three friends, and she related to them the story of her abduction and molestation by appellant.
Appellant went in a nearby bar after the prosecutrix was taken away by the three men. Subsequently, the three friends of the victim proceeded to take vigilante action against the appellant and followed him into the bar. The ensuing scene was described by a witness at trial as follows:
*2 “District Attorney: And tell us what happened next.
“Mr. Darby: Then a bunch of people came in there and roughed him up and I said, don’t let the guys kill him. I said, let’s call the law. And so, Marlow, he went behind the counter and got a stick and a gun and put the guys out. And when he put them out, he went to shut the door back and they all bust in there, a group.
“District Attorney: Did they beat on Willie pretty bad?
“Mr. Darby: They beat on him.
“District Attorney: Draw blood?
“Mr. Darby: I don’t know whether they drawed blood or not. So many in there couldn't see — talking about ladies and men. They tried to take him from the policeman, the detectives. Said, you ain’t got to put him in jail. Said, we’ll kill him; he don’t need to go to jail.”
Police arrived at the bar during this disturbance. Appellant was taken to Montgomery Police Headquarters, where he confessed to taking the girl to his house and having sexual intercourse with her. A lineup was conducted, during which appellant was identified by the victim and the three men who had seen them together.
I
The appellant contends that there was no probable cause basis for the police to have arrested him and, therefore, that the confession secured subsequent to that arrest should have been ruled inadmissible, citing Hadley v. State, 391 So.2d 158 (Ala.Cr.App.1980).
One highly visible factor that served to help establish probable cause for the arrest was the outrage expressed by the “citizen informers” who were attacking the appellant. Vigilante action of this sort is, however, abhorent to the fair and predictable administration of justice that is encouraged by our system of law enforcement.
However, it was not necessary that the police rely on the outrage of the persons in the bar against appellant in correctly deciding that there was probable cause for the arrest. They were supplied other information that indicated (1) a seven-year-old had been assaulted, (2) the appellant had been seen with the victim, and (3) the victim was not wearing her own clothes but clothes that belonged to the appellant.
All of the facts the officers were confronted with at the time of arrest were sufficient “to warrant a man of reasonable caution in the belief that an offense ha[d] been committed.” Draper v. United States, 358 U.S. 307, 79 S.Ct. 329, 3 L.Ed.2d 327 (1959).
Thus, the appellant’s confession was properly admitted into evidence.
II
There was a pre-trial lineup on the day after the rape was committed, at which time the prosecutrix readily identified the appellant as her assailant. Appellant contends that the line-up was so suggestive as to deny his constitutionally guaranteed due process rights.
Factors which should be considered in evaluating the likelihood of misidentifi-cation are as follows:
1. The opportunity of the witness to view the criminal at the time of the crime.
2. The witness’s degree of attention.
3. The accuracy of the witness’s prior description of the criminal.
4. The level of certainty demonstrated by the witness at the confrontation.
5. The length of time between the crime and the confrontation.
Neil v. Biggers, 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972). See also Thomas v. State, 399 So.2d 915 (Ala.Cr.App.1981); Joshua v. State, 372 So.2d 885 (Ala.Cr.App.1979).
The victim had an excellent opportunity to view her attacker over a period of hours. The lineup was conducted the day after the offense occurred, and the victim made an immediate and positive identification. The fact that all participants were *3 dressed identically in jail inmate clothing did not violate any rights of the appellant. Lewis v. State, 399 So.2d 907 (Ala.Cr.App.1981).
III
Appellant claims that the “consent to search” form he signed is invalid because the police officers did not advise him of his right to refuse the search. The form appellant signed reads as follows:
“I, Willie Vinson, having been informed of my constitutional rights not to have a search made of the premises hereinafter mentioned without a search warrant, and of my right to refuse to consent to such a search, hereby authorize Corporal Ricky Moore and Investigator J.W. Barnes, Detectives of the Montgomery Police Department, Montgomery, Alabama, to conduct and complete a search of my premises located at 611 Fountain Street.
“These detectives are authorized by me to take from my premises any child’s clothing and belongings and any evidence which they may desire.
“This written permission is being given by me to the above named Detectives voluntarily and without threat or promises of any kind.”
Officer R.T. Ward of the Montgomery Police Department testified that he explained the meaning of the form to appellant. We find that appellant’s contention relative to the search consent to be without merit.
IV
The appellant claims that in the closing argument to the jury, the prosecuting attorney improperly made reference to appellant as being one of the “animals of the city” and to “three boys sitting in the courtroom.”
As the closing arguments in this case were not included in the record before us, only the unclear reference to these statements contained in the objections made by appellant reveal their content. Those objections are found in the record as follows:
“Mr. Payne: May I have an objection to the phrase when he used the word ‘animal.’ I don’t think it has a place in this court and it should be objected to, and I object to it.
“The Court: So noted. This is closing argument.”
“Mr. Payne: Your Honor, I am going to object to that. I don’t know who these three boys are. I don’t know any three boys in the back of the courtroom; and, if he wants to put them up here, I’m willing to talk to them. That’s not evidence. “The Court: Both sides have a right to subpoena witnesses both State and Defense. Let’s move on. This is closing argument.”
As to the first objection, this court in Barbee v. State, 395 So.2d 1128 (Ala.Cr. App.1981), reviewed various references to the character or appearance of defendants in numerous cases. The Alabama courts have ruled numerous cases. The Alabama courts have ruled numerous critical characterizations as being within the scope of closing argument (e.g., “a hoodlum,” “a slick and slimy crow,” “a moral pervert,” “a viper,” and “a maniac”). Barbee, supra, at page 1134.
As to the latter objection, it is unclear from the paucity of information in the record how the comment, whatever exactly it was, could have been prejudicial to appellant’s rights. Neither the context in which it was apparently made nor the persons to whom the statement was directed are alluded to by appellant. From any possible interpretation of the objection, it appears that the comment was innocuous in its effect on the appellant’s right to a fair trial.
The judgment of the trial court is due to be, and is hereby, affirmed.
AFFIRMED.
All the Judges concur.