A jury found defendant (appellant) guilty under an indictment which charged in pertinent part that he
 ". . . did receive, retain, or dispose of stolen property, to-wit: one Browning .12 gauge automatic shotgun, a better description of which is unknown to the Grand Jury, of the value of $550.00, the property of J. Doyle Fuller, knowing that it was stolen or having reasonable grounds to believe it had been stolen and not having intent to restore it to its owner, in violation of Section 13A-8-18 of the Code of Alabama."
Code of Alabama 1975, § 13A-8-18, provides that "Receiving stolen property . . . Which exceeds $100 in value but does not exceed $1,000 in value . . . constitutes receiving stolen property in the second degree" and that receiving "stolen property in the second degree is a Class C felony." According to § 13A-5-6 (3) the punishment for a Class C felony is "not more than 10 years or less than 1 year and 1 day." The court fixed defendant's punishment at imprisonment for two years and sentenced him accordingly.
We consider first the second issue presented by appellant: "Did the trial Court commit reversible error by denying Turner's motion to exclude the State's evidence?" The second and third paragraphs of appellant's argument in support of "Issue Two" are as follows:
 "The motion tested the sufficiency of the State's evidence to that point [The close of the State's case]. No further elements were added in that the defense presented only character witnesses and the State offered no rebuttal.
 "This leaves the State's case made entirely by the witness Kunart. (R-128-156). It is our position that Kunart was an accomplice and that not one iota of his testimony was corroborated."
Notwithstanding our doubt as to the correctness of appellant's contention that the testimony of Mr. Kunart was not corroborated, we find it unnecessary to make a determination of that question for the reason that we disagree with appellant's contention that the evidence shows that the witness Kunart was an accomplice. It is true that he was in possession of the recently stolen gun upon his purchase of it from the defendant, which fact if not reasonably explained gave rise to an inference that he was an accomplice. However, his explanation thereof, though evincing some lack of due care in purchasing the gun without *Page 460 
more assurance than he had that it was not stolen property, cannot be said to be unreasonable as a matter of law. Especially is this true in the light of the fact that his explanation was lengthy and comprehensive and was subjected to vigorous cross-examination by defendant. It stands in striking contrast with the absence of any explanation whatever by defendant as to defendant's possession of the gun. The defendant and Kunart were employees of the Montgomery Fire Department at the same fire station. Kunart testified that defendant said that the gun belonged to a friend or relative who needed the money and wanted to sell it. He paid $175 for the gun. In appellant's brief is a two-page recital of the testimony of the witness Kunart. We quote some excerpts from such recital, which we think are not in irreconcilable conflict with the rest of his testimony or the rest of the evidence in the case and are sufficient to show that appellant's accusation that the witness was an accomplice is not established by the evidence as a matter of law. On direct examination, the witness said:
 ". . . At the time I didn't know if $175 was a fair price. I felt like I was getting a pretty good deal. Other than from a friend or relative Turner did not indicate where the gun came from. I did not ask him, Turner just volunteered the statements. I bought an A/M radio from Turner about 3 to 4 weeks before I bought the shotgun. Several others had looked at the gun before I bought it, about 3 or 4, all at the Fire Station. They were other firemen. Turner never told me the shotgun was hot, warm, or had been stolen."
On cross-examination the witness said:
 ". . . I saw the shotgun about a week before I bought it. It was at the Fire Station. Turner brought it. He was alone. I was advised by a detective with the Montgomery Police Department at St. Margaret's Hospital to turn the gun in. I took it to the Police Department. About three or four days elapsed from the time I bought the shotgun until I turned it in. It was not unusual for firemen to barter. There is now a restriction against it. I had no reason to believe the gun stolen. In my mind at the time I felt $175 was reasonable . . . I don't know why others did not buy it. I can't give you names of others; it was in the open. Turner didn't try to hide it. It was morning when I bought the shotgun. I told my partner I had bought this shotgun. I took the sling off the shotgun. I still have the sling. I didn't take the sling to the Police Department. I had misplaced it. I found the sling. I didn't inform the police I had found it."
Another issue presented by appellant is as to the denial by the trial court of defendant's motion for a change of venue after a lengthy hearing upon which considerable evidence was introduced as to extensive publicity that had been given by the press, radio and television relative to accusations against defendant that he had been engaged in receiving and selling stolen property. There was also evidence of publicity to the effect that others of the Montgomery Fire Department had been engaged in similar activity and that there was a police investigation with reference to it and that the mayor of the city of Montgomery and the district attorney of the Montgomery County Circuit Court had made statements to the effect that defendant was guilty. Some witnesses on the motion testified in effect that they understood from the great amount of publicity that defendant only was guilty.
We agree with appellant that defendant's motion for a change of venue found considerable support in the evidence, but we conclude that the trial court carefully considered and weighed all evidence on the subject, that the trial judge was in a better position than an appellate court to rule on such a motion and that there was no abuse of the discretion vested in the trial court by the denial of the motion. Appellant cites in support of his contention two cases only: Mathis v. State,280 Ala. 16, 189 So.2d 564, cert. denied, 87 S.Ct. 963,386 U.S. 935, 17 L.Ed.2d 807 (1966) and McLaren v. State, Ala.Cr.App.,353 So.2d 24 (1977), cert. denied, *Page 461 353 So.2d 35. We quote from Mathis v. State, per Justice Goodwyn, at 189 So.2d, p. 566:
 "Publicity by the press, radio and television does not necessarily constitute ground for a change of venue. See: Denton v. State, 263 Ala. 311, 314-315, 82 So.2d 406; Campbell v. State, 257 Ala. 322, 324-325, 58 So.2d 623; Littlefield v. State, 36 Ala. App. 507, 510, 63 So.2d 565, cert. den., 258 Ala. 532, 63 So.2d 573. Whether a motion for a change of venue should be granted is a matter addressed to the sound discretion of the trial court. See: Cobern v. State, 273 Ala. 547, 551, 142 So.2d 869; Collins v. State, 234 Ala. 197, 199, 174 So. 296; Littlefield v. State, supra. From a consideration of the evidence taken on the hearing of the motion, we cannot say that the trial court abused its discretion in denying the motion."
In McLaren v. State, supra, it was stated by Judge DeCarlo at 353 So.2d pp. 31-32:
 "Prejudicial pre-trial publicity may be a ground for a change of venue under T. 15, Section 267, Code of Alabama 1940, Recompiled 1958; Butler v. State, 55 Ala. App. 421, 316 So.2d 348. However, the defendant in a criminal case has the burden of showing there was such prejudice prevailing in the community where his trial was set that a fair and impartial trial could not be had. Boutwell v. State, 279 Ala. 176, 183 So.2d 774.
 "Newspaper articles alone would not necessitate a change of venue unless it was shown that the articles so affected the general citizenry, through the insertion of such sensational, accusational or denunciatory statements, that a fair and impartial trial was impossible. Patton v. State, 246 Ala. 639, 21 So.2d 844.
". . . .
 "In our judgment the appellant did not carry his burden of supporting the motion for change of venue to the reasonable satisfaction of the court. Pryor v. State, 47 Ala. App. 706, 260 So.2d 614; Yoemans v. State, 55 Ala. App. 160, 314 So.2d 79; Flurry v. State, 52 Ala. App. 64, 289 So.2d 632.
 "Under the facts in the present case the trial court did not abuse its discretion in denying the motion for a change of venue."
Our conclusion that the trial court did not commit reversible error in its denial of defendant's motion for a change of venue is not out of harmony with what was held in Mathis v. State,supra, and McLaren v. State, supra, or with other authorities in general on the subject.
Appellant expressly presents in his brief the following issue:
 "Did the trial Court err by permitting the State to ask questions on cross-examination of character witnesses had they heard of specific bad acts attributed to the defendant without limiting the time in which the witnesses had heard such reports to a time prior to the offense for which the defendant was then on trial?"
In arguing this issue, appellant says:
 "At pages 346 and 360 of the record, the State was allowed over objection to ask of character witnesses for the defendant if they had heard of certain bad acts attributed to the defendant. Objection was made by defendant. These questions were improper and the objections should have been sustained because they did not limit the time the witness was to have heard them prior to April 21, 1980. To show what we mean we set out verbatim (all such questions were equally faulty) the question appearing at page 360 of the record:
 "`Q. Mr. Evans, have you heard that prior to April 21, 1980, that Jerome Tucker got juveniles to steal property that he would sell for them?
"`Mr. Bell: Objection.
 "`The Court: Overruled, with the same instructions to the jury.'"
We agree with appellant to the extent that the quoted questions should have been limited to the time of or to a time prior to the alleged offense. In Gamble, McElroy's AlabamaEvidence, § 26.02 (6) (1977), we find: *Page 462 
 "If a person's general reputation, either as a whole or with respect to a specific trait, is admissible as tending to show that he did or did not do a particular act, proof of such general reputation must be restricted to the time of or to a time prior to the alleged act."
It is stated therein in § 26.02 (13):
 "If a witness testifies to another's good general reputation as a whole for the purpose of showing that such other did not do a particular act, the witness may be asked on cross-examination whether he, prior to the alleged act, heard rumors derogatory to such other in any respect. . . ."
A close reading of the quoted question to which an objection was made reveals that by employment of the first "that" in the question instead of being content with the second "that," the question has failed to comply with the requirement as to time. However, the objection was as deficient as the question, in that it did not specify the ground of objection that is specified on appeal. It was a general objection. Furthermore, we note that as to such questions, when proposed in camera and when asked in the presence of the jury, the specific ground claimed on appeal was not assigned. Judge McElroy, in Gamble,McElroy's Alabama Evidence, § 426.01 (10) (1977) has comprehensively covered "Rules as to when a general objection if overruled is sufficient to predicate error on appeal." In the concluding paragraph thereof, he states:
 "Properly interpreted, the most popular and current test would seem to be as follows: A general objection if overruled is sufficient to present for review on appeal the point that the evidence admitted was violative of a specific rule if such evidence is illegal and, according to the common probabilities of experience, there is a fair likelihood that such evidence cannot be made legal by the introduction of other evidence or by otherwise framing the inquiry made to the witness."
The objection under consideration does not meet that test. The overruling of defendant's objection to the question does not constitute reversible error. In Hallman v. State, 35 Ala. App. 534, 50 So.2d 6, 7 (1951), relied upon by appellant, in holding that the trial court committed reversible error in overruling defendant's objection to a question asked a character witness for the defendant as to whether he had heard a derogatory remark about the defendant, it is stated:
 "Among the grounds of objection interposed to these questions was:
 "`It is not confined to a time prior to the alleged offense.'"
In concluding that the trial court did not commit prejudicial error in overruling defendant's objection to the question, we take into consideration the brevity of the time between the alleged crime and the testimony, about three months. This gives little room for possible harm to the defendant by the failure of the question to confine the hearing of the derogatory rumor to the period required by the governing principles of evidence.
Appellant's only other assertion of error is as to the trial court's refusal of defendant's requested written Charge 18 as follows:
 "The Court charges the jury if there is, from the evidence, a reasonable probability of Jerome Turner's innocence, the jury should acquit Jerome Turner."
The charge states a correct principle of law. However, it is not as strong a charge in favor of defendant as a correct charge to the effect that a jury should acquit a defendant if there is, from the evidence, a reasonable doubt of defendant's guilt. In its oral charge and in some given written charges requested by defendant, the court comprehensively and correctly charged the jury to the effect that it should acquit the defendant unless the jury was convinced by the evidence beyond a reasonable doubt and to a moral certainty that he was guilty. Qualified jurors know that if there is a reasonable doubt of defendant's guilt there is certainly a reasonable probability of his innocence. For this reason, defendant's charge No. 18 was properly refused. Benford v. State, Ms. 6 Div. 496, Ala.Cr.App., *Page 463 
Oct. 27, 1981, in which the particular issue is discussed with a collation of authorities. Moreover, we adopt and apply what was recently held in Allen v. State, Ms. 6 Div. 993, Ala.Cr.App., Nov. 24, 1981, per Judge Tyson, that the now applicable statutory authority as to the refusal of requested written charges, Tit. 12-16-13, Code of Alabama 1975, does not retain the "automatic exception" provision of the statutory law on the subject.
No error prejudicial to defendant is found in the record. The judgment of the trial court should be affirmed.
The foregoing opinion was prepared by Retired Circuit Judge LEIGH M. CLARK, serving as a judge of this Court under the provisions of § 6.10 of the Judicial Article (Constitutional Amendment No. 328); his opinion is hereby adopted as that of the Court. The judgment of the trial court is hereby
AFFIRMED.
All the Judges concur.