George Richard Jones was indicted for the armed robbery of one Robert Dickerson, Jr., by putting him in fear or by threat of violence to his person, etc. The jury found the appellant "guilty as charged" and the trial court, following a sentencing hearing, set punishment at 20 years' imprisonment in the penitentiary.
This case arises from the armed robbery of the Civic Center Branch of the Birmingham Trust National Bank at approximately 1:40 p.m. on the afternoon of May 2, 1979. Employees of the bank activated the film equipment which took photographs of the robbery as the same was in progress. Subsequently, investigators made enlargements from various photographs taken from the video tape of the robbery in question.
Robert Dickerson, Jr. was branch manager of the bank on the date in question. He indicated that on this date he was talking with a customer when he was approached by a black male, slightly over six feet tall, wearing a Big Apple hat pulled over his eyes, brown button-up shirt, tennis shoes and lighter colored pants, who pointed a shotgun at him and required him and the customer to lie on the floor. He stated that the robbery covered a space of less than ten minutes and approximately $12,000.00 was removed from the bank. He stated that none of the proceeds was surrendered voluntarily and that the bank used dye bombs with bait money which would rub off on persons involved in the robbery.
Anthony Jones stated he was a customer in the bank who had been talking with Mr. Dickerson when he observed the appellant inside the bank pointing a shotgun at Mr. Dickerson. Mr. Jones made a positive in-court identification of the appellant. He stated that he had no prior knowledge before coming into court that the appellant would be seated at any particular place in the courtroom and on cross-examination stated that he had not been told by the prosecutor that the appellant was black or that he would be seated at counsel table during trial.
Herman Boykin, also called as state's witness, testified that he was a customer inside the bank in question shortly before 2 p.m. on the afternoon in question when he saw the appellant and a companion and observed *Page 1249 
appellant as he went to a window with a shotgun. He made a positive in-court identification of the appellant. He stated that he was required to lie down on the floor and he observed appellant and a companion as they left the bank and that he saw a dye bomb go off and that the men dropped the bag of money and then tried to gather it up.
On cross-examination, Boykin stated that he did see a man seated at counsel table with his back to him the day before trial, but that he did not get a good look at the man and had not been told who was seated there, nor was he given prior to trial any information as to the appellant or his whereabouts in the courtroom.
James Calhoun stated he was a customer of the bank and had approached a drive-in window on the afternoon of May 2, 1979, when he looked in and saw a black man, whom he identified as the appellant, with a companion going through the drawers of the bank and that he saw them leave, heard a dye bomb go off and saw the men gather up the proceeds and run out of the bank.
On cross-examination he stated that he had been taken to the courtroom by the district attorney handling the case the day before trial and that he had seen some persons in the courtroom, but that the prosecutor did not tell him who would be in the courtroom or their whereabouts during the time of the trial. He stated that he believed he had seen a side view of the appellant the previous day, but he could make a positive in-court identification of appellant from having seen him the day of the robbery and did so based on his view of him inside the bank.
Events inside the bank were verified by other state witnesses and investigating officers from photographs and statements given to them by persons inside the bank on the date in question.
 I
The appellant moved to exclude at the close of the state's evidence and moved to suppress the identification by the state's witnesses at trial. These motions were denied.
In brief appellant's counsel cites Neil v. Biggers,409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972); Manson v. Brathwaite,432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977); and Cannonv. State, 558 F.2d 1211, 5th Cir. (1977) in support of his motions.
With reference the testimony of the manager of the branch bank in question, Mr. Robert Dickerson, Jr., it should be here noted that the trial court granted appellant's motion with reference his testimony as to his identification of appellant as he indicated that the prosecutor had told him on the day prior to trial that the appellant would be the party on trial the next day. The trial judge very carefully excluded this testimony and instructed the jurors not to consider such in their deliberations with reference the issues which would come before them.
However, the other state's witnesses who made a positive in-court identification were either in the bank as customers or an employee and each very carefully testified that their identification of the appellant was based upon their observation of him and his companion inside the bank on the afternoon of May 2, 1979.
Each of the state's witnesses was cross-examined by defense counsel as to their examination of photographs or a lineup before trial and also as to whether or not they had been brought into the courtroom the day before trial and as to what may have occurred with reference each witness at that time.
Each of the remaining state's witnesses indicated their identification was based upon their view of him during the robbery of the Civic Center Branch of the Birmingham Trust National Bank on the afternoon of May 2, 1979.
In cases such as the instant cause, we are carefully required to weigh the evidence presented, including the cross-examination, to see if such testimony is tainted by virtue of pretrial procedures employed by the prosecution. In the case at bar, we find *Page 1250 
that those witnesses whose testimony identified the appellant as being one of the robbers on the date in question and as being inside the bank and pointing a shotgun at employees and removing the proceeds from the bank were very careful in identifying the appellant based upon their observation of the robbery while in progress. We therefore are of the opinion that the trial court properly submitted the remaining testimony to the jury and overruled the appellant's motion to suppress and motion to exclude the testimonies at trial. Smith v. State,53 Ala. App. 27, 296 So.2d 925 (1974); Childers v. State,339 So.2d 597 (Ala.Cr.App.), cert. denied, Ala., 339 So.2d 601 (1976);Liptroth v. State, 342 So.2d 959 (Ala.Cr.App.), cert. denied, Ala., 342 So.2d 961 (1977); Dixon v. State, 357 So.2d 690
(Ala.Cr.App. 1978); Chambliss v. State, 373 So.2d 1185
(Ala.Cr.App.) cert. denied, Ala., 373 So.2d 1211 (1979);McKinnis v. State, 392 So.2d 1266, (Ala.Cr.App.), cert. denied, Ala., 392 So.2d 1270 (1980).
 II
Appellant's counsel asserts that this cause is due to be reversed due to several instances which he alleges constitute "prosecutorial misconduct." In particular, counsel asserts that such an atmosphere was created by the cumulative effect of the assistant district attorney's actions that a prejudicial atmosphere was thus created. Counsel calls attention to instances at R. page 279, 308-310 and R. 320.
 A
In reviewing the assertions of counsel, we note herein that the examination on R. 279 was with reference the witness Mr. Calhoun and his observations of the incident which occurred in the Civic Center Branch of the Birmingham Trust National Bank on May 2, 1979.
The witness indicated that the assistant district attorney did not say who in fact would be seated in the witness chair at trial. There was some colloquy between the attorneys and the court finally indicated to them to address their remarks to the court. The questioning then continued and the witness made a positive in-court identification of the appellant. We see no error.
 B
With reference the exchange on R. pages 308-310, state's witness Mr. Moynihan was on the witness stand and indicated that James Calhoun was a customer at a drive-in window. He also stated that Mr. Boykin was a customer within the bank. The court stated that this witness could not testify as to what Mr. Boykin had told him and subsequently admonished counsel that he could not reveal the results of his interview with one Anthony Jones; that such was inadmissible and to move along. Clearly, the refusal to allow hearsay into evidence was proper and no error resulted.
With reference the interrogation on R. 319 and 320, this was of the redirect examination of Sergeant Miller as to the results of his investigation. The Sergeant had examined certain photographs and had talked with various witnesses and he identified witnesses with whom he had conversed. He also stated that he had turned fingerprints over to the F.B.I. However, the court pointed out that the parties had stipulated that because the prints were smudged, no positive identification could be made. We see no error in the court's rulings as to this witness.
 C
Finally, with reference the testimony on R. 370-372, this involved the testimony of the appellant's sister during cross-examination by the district attorney. She was asked if he had been down and talked with the district attorney following his brother's arrest. With reference the specific question as to what defense counsel, Mr. Newman, told her to testify to, we quote R. 371 and 372 for clarity:
 "Q And weren't you and Mr. Newman out there talking about what you were going to testify to?
"A No. *Page 1251 
"Q That's not true?
"A That's not true.
 "Q Let me ask you, Ms. Tyler, isn't it a fact that you stood out there in the hall and Mr. Newman told you as you stood there in the hall, you just go in there and testify and tell these ladies and gentlemen of the jury what I told you last night to tell us? Didn't he make that statement?
 "MR. NEWMAN: I object to that. That's absolutely and thoroughly not true. That's unbelievable.
"THE COURT: Overruled.
 "Q That's not true? He did not make that statement to you? You're sworn to tell the truth. He didn't tell you that?
"MR. NEWMAN: Objection.
"THE COURT: Overrule your objection.
"A He didn't say that.
"Q What did he say?
 "A He asked me was I all right. He told me not to be nervous, just answer the questions yes or no. That's all.
"Q What else did he say besides that?
 "A That's all that he told me. That's the honest truth.
 "Q Did your brother George Jones own a car back then on May 2d 1979?
"A No.
 "Q Do you know any of your brother's friends back then?
"A No.
"Q Did you know any of George's friends?
"A No.
 "Q George Jones lived at your mother's house and at your house?
"A Right.
 "Q And you were over there from 7:00 o'clock til 5:00 o'clock everyday?
"A That's true."
In examining this exchange, it is clear that the witness gave a negative answer to the district attorney's questions and the trial court correctly ruled on the objection. Clearly, no error occurred.
 III
Finally, counsel calls attention to a number of jury charges which were refused by the trial court.
Particularly, counsel questions the trial court's refusal to charge with reference the "probability of innocence" and "reasonable doubt as to guilt" which "may arise from only part of the evidence" and further as to the weight of the state's witnesses' testimony.
At the outset, we note that there was no exception to the oral charge of the trial court. We have carefully reviewed this charge and find that the trial judge did carefully cover the presumption of innocence, the weight and credibility of various witnesses for both sides, the elements of the offense in question, the identity of the parties, conspiracy and guilt beyond a reasonable doubt and to a moral certainty. We find no error in the refusal of the written requested charges. Section12-16-13, Code of Alabama, 1975.
Moreover, inasmuch as counsel for appellant did not object or except as to the refusal of each of these requested charges in open court, he did not preserve the refusal of same for our review. Allen v. State, 1981, 414 So.2d 989 (Ala.Cr.App.).
We have carefully examined this record and find no error therein. The judgment of the trial court is therefore due to be and is hereby affirmed.
AFFIRMED.
All the Judges concur. *Page 1252