TYSON, Judge.
Jackie Alldredge was indicted for rape in the first degree in violation of § 13A-6-61, Code of Alabama 1975. The appellant was found “guilty as charged in the indictment” and the trial court set sentence at 15 years’ imprisonment in the penitentiary.
At approximately 7:00 p.m. on September 6, 1980, the prosecutrix and her 13 month old son left their home in Valhermosa Springs, Madison County, Alabama, to visit her parents who resided in Lacey’s Springs. She and her husband had just finished dinner and she left him at home because he was tired. After visiting her parents for a few hours, she left to return home.
The prosecutrix was worried about running out of gas on the way home because the gas gauge on her car did not function properly. She passed two gasoline stations on the way to her home but did not stop because she did not have any money. Approximately four miles east of the intersection of U.S. 231 and Alabama 36, the prose-cutrix’s car did, in fact, run out of gas. At this point, the prosecutrix pulled her car to the side of the road, turned on the flashers and locked three of the doors. After sitting in the car for 10 to 15 minutes she decided to get out and walk with her child toward the Wavaho gas station so she could call her mother for help.
As she was walking, a car passed her, turned around and passed her again, and then turned around a final time and came *1333 up behind. The prosecutrix became frightened and began to run. One of the persons in the car, whom she later learned was named Stanley Cox, grabbed her by the arm and pushed her and the child into the back seat of the car. The driver of the car was the appellant.
Once she was in the car, the appellant drove to the Wavaho Station and asked for five dollars worth of gasoline. The prose-cutrix said she knew the service station attendant and tried to get his attention by making the baby cry but she was unsuccessful. She stated she did not try to escape “[b]ecause they told me when I pulled up if I said anything, he had a knife and he would kill me. That all Jackie had to do was mash the gas and go, and there wouldn’t nobody catch them.” (R. 46).
The appellant then drove away from the station toward Brinley Mountain. A short time later the appellant stopped the car, and he and -Cox got some beer out of the trunk. The appellant then asked the prose-cutrix if she was “going to give him a piece.” She told him no and the two men got back in the car and drove to an area called Fort Bluff.
The appellant then told her to give him a piece or walk home. She told him she wished to walk home so she and the child got out of the car and began to walk. After she had walked a short distance the appellant grabbed her and forced her back in the car. Cox then told the appellant that “they might as well kill me because they had already — that if I claimed rape they wouldn’t have as much time as if they had already raped me.” (R. 56).
After driving around for a while longer, the appellant again stopped the car and pulled the prosecutrix out of the car, then Cox grabbed the child and took him to the edge of a cliff. The child was crying and she begged him to let her have her baby. The appellant kept asking her to “give him a piece” and she kept telling him no. Then one of the two men said “... they didn’t know that a mother could be that selfish, to let her baby die because she wouldn’t give them what they wanted.” (R. 61). She was scared her child was going to be killed so she told the appellant “all right”. (R. 61).
The appellant then took her down a road, took off her clothes and forced her to have sexual intercourse with him against her will. Once he finished, he told her to lie there on the ground. Cox then walked up and attempted to engage in sexual intercourse with her. However, he was unable to consummate the act and told her to get up and get dressed.
The prosecutrix then got into the car and they drove away. Cox told the appellant that they should kill the prosecutrix but the appellant told Cox he had promised not to kill her if she let him have what he wanted. The appellant instructed the prosecutrix not to tell anyone or he would find her and kill her. She was then dropped off at the Wavaho Station.
At the station, she saw Red Johnson and asked him to take her to her mother’s house.
David “Red” Johnson stated he was at the Wavaho Station at approximately 10:30 p.m. on September 6, 1980. When he first saw the prosecutrix at the station she was crying and was very upset. He asked her what was wrong and she told him she had been raped. Johnson noticed some black marks on the child’s neck which looked like someone had put their hands on the child’s neck.
At approximately 11:00 p.m. on the same night, the prosecutrix’s parents were awakened by the prosecutrix. She appeared very upset and said she had been raped. The prosecutrix’s mother noticed the child’s arms were red and he had grease spots on his neck, back and shoulders.
The Sheriff’s Department was called and the prosecutrix gave them a description of the car the appellant was driving. The prosecutrix then called her mother-in-law and informed her of the incident. Her *1334 mother-in-law then went to her son’s home and awakened him. They then went to be with the prosecutrix at her parent’s home. Once there, the prosecutrix was taken to the hospital for an examination.
At the hospital, Dr. George Douglas examined the prosecutrix. He took several samples from the prosecutrix in the preparation of the rape kit which was later sent to Roger Morrison, a forensic serologist with the Department of Forensic Sciences for analysis. The presence of spermatozoa was found in the samples taken from the prosecutrix.
Roger Smallwood testified that he stopped the car which the appellant was driving at approximately 2:00 a.m. on September 7, 1980, after receiving a description of the car and a report of the general area in which it had been spotted. The appellant, Cox and his brother, Michael Cox, were in the car at this time. Small-wood found a pocket knife on the appellant and one also on Cox.
The prosecutrix’s husband stated that on September 7, 1980, he went to pick up the car the prosecutrix had been driving the night before. It was still at the location where she had left it and he had to prime the carburetor in order to get it started.
The appellant testified he and Stanley Cox were riding around drinking beer on September 6, 1980. At some point, they decided to go to the Wavaho Station for gasoline. Along the way, they noticed the prosecutrix walking beside the road with her child. The appellant stopped the car and asked her if she wanted a ride. The prosecutrix stated that she did and got in the car. Once inside the car, she stated she had run out of gas and needed to get to a telephone.
The appellant then continued on to the Wavaho Station. When they arrived at the station the prosecutrix slid down in the back seat and stated, “There’s my husband. He will kill me if he sees me in the car with ya’ll.” (R. 298).
The appellant drove off after purchasing some gasoline. He drove to another phone but the prosecutrix did not use it. Cox and the appellant continued drinking beer as they were riding around. At some point, the appellant stopped the car and told the prosecutrix “to put out or get out.” (R. 309).
The prosecutrix then got out of the car and began walking with her child. After she walked a short distance, the appellant told her to get back in the car and he would give her a ride. She got back in the car and they started driving toward Huntsville.
When they got to the Fort Bluff area, the appellant again stopped the car and went to the trunk for a beer. After he got back in the car, the prosecutrix asked for a cigarette and then asked where they were “going to do it at.” (R. 311). He told her they could do it on the ground so the two of thém got out and engaged in sexual intercourse.
The appellant testified he did not force her to have sex nor did he or Cox ever threaten her or her child.
I
The appellant contends the trial judge committed reversible error because he did not charge the jury on the lesser included offense of sexual misconduct.
Section 13A-l-9(b), Code of Alabama 1975 states:
“The court shall not charge the jury with respect to an included offense unless there is a rational basis for a verdict convicting the defendant of the included offense.”
To determine whether a rational basis existed in this case to support a charge of sexual misconduct, we must first define that offense.
“A person commits the crime of sexual misconduct if:
(1) Being a male, he engages in sexual intercourse with a female without her *1335 consent, under circumstances other than those covered by sections 13A-6-61 and 13A-6-62; or with her consent where consent was obtained by the use of any fraud or artifice; or
(2) Being a female, she engages in sexual intercourse with a male without his consent; or
(3) He or she engages in deviate sexual intercourse with another person under circumstances other than these covered by sections 13A-6-63 and 13A-6-64. Consent is no defense to a prosecution under this subdivision.”
Ala.Code, § 13A-6-65(a)(1975).
We are only concerned with subdivision (1) of the above statute since subdivisions (2) and (3) clearly are not applicable.
The appellant states in his brief that the prosecutrix engaged in sexual intercourse with him because she was afraid to walk through an isolated rural area in the middle of the night with her 13 month old child. Thus, he contends, an instruction on the offense of sexual misconduct should have been given to the jury.
We cannot agree with this argument of the appellant. There was clearly sufficient evidence elicited at trial to sustain the appellant’s conviction for rape in the first degree.
“A male commits the crime of rape in the first degree if: He engages in sexual intercourse with a female by forcible compulsion.”
Ala.Code, § 13A-6-61(a)(l), (1975).
Forcible compulsion is defined in § 13A-6-60(8) as:
“Physical force that overcomes earnest resistance'or a threat, express or implied, that places a person in fear of immediate death or serious physical injury to himself or another person.”
The prosecutrix testified she engaged in sexual intercourse with the appellant because she was scared she would be' killed unless she acquiesced. Furthermore, she had been told that the two men had a knife and they had discussed killing her. Certainly, these facts constitute forcible compulsion. If the jury believed the prose-cutrix’s testimony, which they did, then the appellant was guilty of rape in the first degree.
The appellant testified the prosecutrix was given two opportunities to use the telephone shortly after she was picked up by the two men. She chose not to use the phone and voluntarily continued to ride around with them even though she had a chance to escape or get away. The appellant stated that he told the prosecutrix at one point to “put out or get out.” Had she engaged in sexual intercourse with the appellant at this point, we might have seen some merit in the appellant’s argument. However, following the appellant’s statement, the prosecutrix began walking. The appellant then told her he would give her a ride anyway and she voluntarily got back in the car with the two men. A short time later, with no further urging from the appellant, the prosecutrix asked where they were “going to do it at.” These facts clearly indicate consent. The appellant never stated the prosecutrix “had sex with him just to obtain a ride home.” Furthermore, he stated she was very friendly after this incident occurred and she said “bye” when she was dropped off at the Wavaho Station.
Therefore, from the evidence presented at trial, either the appellant forced the prosecutrix to have sex with him and was guilty of first degree rape, or the prosecutrix consented to sexual intercourse and the appellant was not guilty of any offense.
From our examination of the facts, as disclosed above, we do not find a rational basis which would support a charge on sexual misconduct. Therefore, the trial judge properly refused to charge the jury on that offense. Myers v. State, 401 So.2d 288 (Ala.Cr.App.1981).
*1336 II
The trial judge refused to give the following charges which the appellant claims constituted reversible error:
“DEFENDANT’S REQUESTED WRITTEN CHARGE NO. 4
“I charge you members of the jury that a reasonable doubt is not the same as a probability of the Defendant’s innocence. A reasonable doubt of the Defendant’s guilt may exist even when the evidence fails to convince the jury that there is a probability of the Defendant’s innocence.”
“DEFENDANT’S REQUESTED WRITTEN CHARGE NO. 5
“I charge you members of the jury that if you are not satisfied beyond all reasonable doubt and to a moral certainty to the exclusion of every reasonable hypothesis but that of the guilt of the Defendant, then you should not find the Defendant guilty; it is not necessary to raise a reasonable doubt that the jury should find from the evidence a probability of the Defendant’s innocence, but a reasonable doubt may arise even when there is no probability of the Defendant’s innocence in the testimony and if the jury have not an abiding conviction to a moral certainty of the Defendant’s guilt, it is the duty of the jury to find the Defendant not guilty.”
“DEFENDANT’S REQUESTED WRITTEN CHARGE NO. 8
“I charge you members of the jury that if from the evidence there is a probability of the Defendant’s innocence, that is just ground for a reasonable doubt and you should find the Defendant not guilty.”
There is an extensive discussion on the law in Alabama concerning the above instructions in 23 A C.J.S. § 1282 p. 675. The more recent decisions and the majority view seem to indicate that the above charges are properly refused for the reasons we will state below, although there are cases which hold to the contrary.
Charges number 4 and 5 have been properly refused as argumentative and not predicated on the evidence. Whittle v. State, 213 Ala. 301, 104 So. 668 (1925); Odom v. State, 253 Ala. 571, 46 So.2d 1 (1950); McDowell v. State, 238 Ala. 101, 189 So. 183 (1939); Clayton v. State, 36 Ala.App. 610, 63 So.2d 564, cert. denied, 258 Ala. 451, 63 So.2d 565 (1952); Turner v. State, 410 So.2d 458 (Ala.Cr.App.), cert. denied, 410 So.2d 458 (Ala.1982); Thomas v. State, 399 So.2d 915 (Ala.Cr.App.1981); Fitch v. State, 372 So.2d 1328 (Ala.Cr.App. 1979), cert. denied, 372 So.2d 1331 (Ala.1979).
Charge number 8 has been properly refused as failing to predicate the probability of innocence on the evidence in the case. Lovejoy v. State, 33 Ala.App. 414, 34 So.2d 692, cert. denied, 250 Ala. 409, 34 So.2d 700 (1948); Walker v. State, 33 Ala.App. 614, 36 So.2d 117 (1948); Register v. State, 34 Ala.App. 505, 42 So.2d 519, cert. denied, 252 Ala. 659, 42 So.2d 525 (1949); Carter v. State, 53 Ala.App. 248, 298 So.2d 668 (1974).
Furthermore, we hold the above charges were substantially and fairly covered by the court’s oral charges and the giving of several of the written charges requested by the appellant. Ala.Code, § 12-16-13 (1975). Stinson v. State, 401 So.2d 257 (Ala.Cr.App.1981); Jones v. State, 412 So.2d 1247 (Ala.Cr.App.), cert. denied, 412 So.2d 1247 (Ala.1982).
Therefore, we hold the trial judge did not err in refusing to give charges number 4, 5 and 8 as requested by this appellant and find no ground for reversal on this issue.
The judgment of the trial court is due to be and is hereby affirmed.
AFFIRMED.
All the Judges concur.